**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

ANDY'S MUSIC, INC.,                    :

      **Plaintiff,**                    :

vs.                                    : **CA 08-0463-KD-C**

ANDY'S MUSIC, INC.,                    :

      **Defendant.**                    :

## REPORT AND RECOMMENDATION

This matter is before the undersigned on Defendant's Motion to

Dismiss (Doc. 9), filed January 26, 2009.  After consideration of the motion

and pleadings relevant thereto, it is the undesigned's recommendation that

Defendant's motion be **GRANTED**.

**I.    Background.**

Plaintiff Andy's Music, a corporation organized under the laws of

the State of Alabama with its principal place of business here in Mobile,

owns two registered trademarks, one "for use in connection with musical

instruments," and the other for a website with the same topic matter.  (Doc.

15, p. 2.)  Defendant Andy's Music, also a corporation in the musical

instrument business, "is a small, privately-held, locally[-]owned[-]and[-

]operated retail musical instruments and concert equipment rental business"

that hails from Chicago and is incorporated in the State of Illinois.  (Doc.

10, p. 1.)

Bringing claims of trademark infringement and unfair competition, Plaintiff seeks to enjoin Defendant from the use of the name "Andy's Music," alleging that Defendant's use of both of their trademarks "has already caused confusion in the marketplace[,] in that customers have contacted [Plaintiff] with the mistaken belief that [Plaintiff] was [Defendant]."  (Doc. 1, ¶¶ 17, 19-20.)  Plaintiff also asks the Court for "actual damages, [Defendant's] profits, costs, and attorneys' fees."  (*Id*. at ¶ 1.)  Importantly, the only theory of personal jurisdiction that Plaintiff asserts regarding Defendant concerns the use of a website, http://www.andysmusic.com.  (Doc. 1.)  Under Plaintiff's theory, the maintenance of this internet site creates an unavoidable expectation that Defendant could be haled into any court within the jurisdiction of the United States, regardless of the absence of any other factors establishing contacts with the forum state.  (Doc. 15, p. 7.)   In short, because the reach of the world-wide web extends to every American jurisdiction, Plaintiff's theory would create personal jurisdiction over Defendant anywhere in the United States.

### 1.     *A Short History of Andy's Music*

Regarding the time line of each corporation's association with the name "Andy's Music," Defendant opened its only storefront in the Windy City in 1991, using its current name, and "has operated its retail business

2

continuously and exclusively in the Chicago area . . . ever since." (Doc. 10, p. 2.)  Plaintiff, on the other hand, claims to have used the name in connection with musical instruments continuously since April of 1977, but provides no explanation as to why they did not register the trademark until late 2007.  (Doc. 1, ¶¶ 7-8.)

      In late 1999, Defendant acquired the internet domain name of "andysmusic.com" and has operated their website since April of 2000. (Doc. 10, p. 2.)  Defendant claims that this is a "passive website," in that "it is not possible to purchase products on [the site] or to otherwise transact business, and in fact Defendant has never sold any product or provided any services through its website."  (Doc. 10, Exhibit A, ¶ 8.)  Instead, Defendant claims, their website "merely indicates the Chicago, Illinois location of [their] retail store and provides business hours and a *local* telephone number for the location as well as a map of the store's location in Chicago." (Doc. 10, p. 2 (emphasis supplied).)  Defendant contends that these characteristics mark their website as "no more than an electronic informational listing for [their] local clientele," and as such, the maintenance of the site does not subject them to this Court's jurisdiction. (*Id.*)  Defendant also makes the specific observation that Plaintiff's trademark registrations were filed in May 2006, a date *fifteen years* removed from Defendant's store opening in the Prairie State and three

months after Defendant launched its "passive" website.  (*Id*. at 3.)  Indeed, Plaintiff admits that their trademark registration for "Andy's Music Online" was not finalized until February 26, 2008, when Defendant's site had been up and running for almost two years, although they claim to have used the (unrecorded) mark as early as July 15, 2000.  (Doc. 1, ¶¶ 7, 9.)

## II.  Discussion.

### 1.  *Standard(s) of Law*

The undersigned notes, as an initial matter, that "the plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant."  *The Mitchell Company, Inc. v. Campus*, 2008 WL 183344, *13 (S.D.Ala.) (quoting *Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002)).  Also, "Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." *Id.* (quoting *Future Technology Today, Inc., v. OSF Healthcare Systems, Inc.*, 218 F.3d 1247, 1249 (11th Cir. 2000)).  Finally, "[a] federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits. . ." *Id.* (quoting *Meier*, 288 F.3d at 1269).

*In personam* jurisdiction in this action, then, is predicated upon Alabama long-arm statute, which provides:

An appropriate basis exists for service of process outside of

this state upon a person or entity in any action in this state
when the person or entity has such contacts with this state that
the prosecution of the action against the person or entity in this
state is not inconsistent with the constitution of this state or the
Constitution of the United States. . .

Ala. R. Civ. P. 4.2(b)**.**

In a diversity action such as the present one, "a federal court may
assert jurisdiction over a nonresident defendant only to the extent permitted
by the long-arm statute of the forum State, and only if the exercise of
jurisdiction comports with the requirements of the Due Process Clause of
the Fourteenth Amendment." *Vermeulen v. Renault, U.S.A., Inc.*, 975 F.2d
746, 753 (11th Cir. 1992), *opinion modified and superseded on other
grounds by Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir.
1993), *cert. denied sub nom. Regie Nationale des Usines Renault S.A. v.
Vermeulen*, 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993); *see also
Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992) (panel
of the Eleventh Circuit states that in determining whether a district court
may assert personal jurisdiction depends upon whether the district court
could obtain personal jurisdiction over the defendants pursuant to the
applicable state long-arm statute and whether the exercise of personal
jurisdiction would violate the Due Process Clause of the Fourteenth
Amendment), *cert. denied sub nom. South Carolina Property & Casualty
Ins. Guar. Ass'n v. Olivier*, 507 U.S. 983, 113 S.Ct. 1577, 123 L.Ed.2d 145,

and *cert. denied sub nom. Louisiana Ins. Guar. Ass'n v. Olivier*, 508 U.S.

910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993).

Where, as here, the courts of the forum state have interpreted the

forum's long-arm statute to confer jurisdiction to the limits allowed by

federal due process, *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*,

207 F.3d 1351, 1355-56 (11th Cir. 2000) ("Alabama permits its courts to

exercise jurisdiction over nonresidents to the fullest extent allowed under

the Due Process Clause of the Fourteenth Amendment to the

Constitution."); *Ex parte Lagrone*, 839 So.2d 620, 623 (Ala. 2002) ("Rule

4.2, Ala.R.Civ.P., Alabama's long-arm rule, 'extends the personal

jurisdiction of Alabama courts to the limits of due process under the federal

and state constitutions.'"); *see also Steel Processors, Inc. V. Sue's Pumps,*

*Inc. Rentals*, 622 So.2d 910, 911 (Ala. 1993); *Sieber v. Campbell*, 810

So.2d 641 (Ala. 2001); and *Duke v. Young*, 496 So.2d 37 (Ala. 1986), state

law need not be applied: this Court "need only ask whether the exercise of

jurisdiction over the nonresident defendant comports with due process."

*Vermeulen*, *supra*, 975 F.2d at 753; *see also Olvier*, *supra*, 979 F.2d at 830

(same) and *Morris v. SSE, Inc.*, 843 F.2d 489, 492 n.3 (11th Cir. 1988)

("This case presents no need to examine Alabama's long-arm jurisdictional

statute because that statute authorizes a court to assert personal jurisdiction

to the limits of federal due process. . . . We recognize that it is well-

established in this circuit that in a diversity case, a federal district court
adjudicating a motion to dismiss for lack of personal jurisdiction must
determine whether [the] assertion of jurisdiction comports with both state
law and the due process requirements of the United States Constitution. . . .
However, where the forum's courts interpret the forum's long-arm statute to
the limits of *federal* due process, we believe it is not necessary to apply
state law; application of the federal *International Shoe* two-part analysis
will suffice.").[1]

Turning to that seminal case, one can see that a nonresident
defendant is amenable to a forum's jurisdiction if "(1) it possesses sufficient
minimum contacts with the forum State to satisfy due process requirements,
and (2) the forum's exercise of jurisdiction comports with "traditional
notions of fair play and substantial justice." *Vermeulen*, *supra*, 975 F.2d at
754 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66
S.Ct. 154, 158, 90 L.Ed. 95 (1945), in turn quoting *Milliken v. Meyer*, 311
U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).  As stated in
*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104
S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (citations omitted), "[d]ue process

---

[1] It is also noteworthy that our Alabama courts have straightforwardly stated that a
"physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident."
*Sieber*, 810 So.2d at 644.

requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *See also Ruiz de Molina*, *supra*, 207 F.3d at 1356 ("The Due Process Clause permits a court to summon a nonresident to defend himself in the forum so long as that person has some minimum contacts with that state and the exercise of personal jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice."); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (same).

As this court has stated elsewhere, "[j]urisdiction may be either general or specific," with general jurisdiction applying where a defendant's activities in the forum state are "substantial or continuous and systematic, regardless of whether those activities gave rise to the lawsuit" and specific jurisdiction where "a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit." *Campus*, 2008 WL 183344, at *15 (quoting *Leventhal v. Harrelson*, 723 So.2d 566, 569 (Ala. 1998). To aid in this analysis, the Supreme Court has stated that when a cause of action is related to or arises out of a nonresident defendant's contacts with the forum, "the relationship among the defendant, the forum, and the litigation is the essential foundation of *in personam* jurisdiction."

8

*Helicopteros*, *supra*, 466 U.S. at 414, 104 S.Ct. At 1872 (quoting *Shaffer v.*

*Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

Moreover, the Eleventh Circuit has stated:

> Specific jurisdiction arises out a party's activities in the forum that are related to the cause of action alleged in the complaint. It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where a defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  The requirement that there be minimum contacts is grounded in fairness.  It assures that "the defendant's conduct and connection with the forum State [is] such that *he should reasonably anticipate being haled into court there.*

*Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th

Cir. 2000) (internal citations omitted) (emphasis added), *cert. denied*, 534

U.S. 827, 122 S.Ct. 68, 151 L.Ed.2d 34 (2001).  *See also Dillon Equities v.*

*Palmer & Cay, Inc.*, 501 So.2d 459, 462 (Ala. 1986) (quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d

490 (1980) ("The foreseeability that is critical to due process analysis. . . is

that the defendant's conduct and connection with the forum state are such

that he should reasonably anticipate being haled into court there.").

### 2.    *Defendant's Use of Andysmusic.com*

Because it is undisputed that Defendant does not currently do

business in Alabama and never has done so, that Defendant is not required

to be registered or otherwise qualified to do business in Alabama, that

Defendant has never been required to file a tax return regarding the State of Alabama, that Defendant has no employees (including officers or directors) in Alabama, that Defendant does not maintain any offices in Alabama, that Defendant does not own any assets or maintain any bank accounts in Alabama, that Defendant does not own or lease any property in Alabama, that Defendant does not advertise its services in Alabama, that Defendant does not derive any revenue from goods, services, or products offered, sold or consumed in Alabama, and generally that Defendant has had no contact with the State of Alabama besides the allegedly relevant website, it is the nature of the website itself that becomes the focus of the present inquiry. (Doc. 10, p. 6-7; Doc. 15 (exhibiting a failure to challenge Defendant's aforementioned statements).)

Also apparent from the record is the fact that Defendant was entirely unaware of Plaintiff's existence until August 7, 2008, when they received what must have been a rather puzzling communication explaining that the present lawsuit had been filed against them.  (Doc. 10, p. 3.)  Notably, the complaint itself does not allege that Defendant had any knowledge of the Plaintiff or its business activities until that August 7, 2008 interaction. (Doc. 1.)

### 3.    *The Foreseeability Element(s) of Minimum Contacts*

Nevertheless, Plaintiff attempts to show that this Court's jurisdiction

10

over Defendant is proper, pointing to the case of *Coblentz v. General Motors Corp.*, 724 F.Supp. 1364 (M.D.Ala. 1989) for the proposition that "the Defendant could reasonably have expected that the Plaintiff [sic] would bring suit [in Alabama], regardless of the Defendant's [sic] lack of other contacts in Alabama, and [that] the Defendant has the requisite minimum contacts with Alabama . . . ." (Doc. 15, p. 7.)  Starting with the observation that "Defendant was notified on August 7, 2008[,] that it was infringing [upon] the [p]laintiff's trademarks," Plaintiff claims that "the evidence indicates that the [d]efendant was aware that it was likely committing trademark infringement against the [p]laintiff at least as early as August 2008 and has continued to do so anyway," despite the notice of August 7th. (*Id.*)  Plaintiff's argument must fail for a number of reasons, not the least of which is the duplicity which surrounds its reasoning.

By making the above comments, Plaintiff implies that they brought the current action only after they had kindly alerted Defendant of the possibility that they were violating their recorded trademarks, then suffered the indignation of that Chicago-based moniker-sharer continuing to use the mark(s) and thus confuse potential customers, etc.  Indeed, Plaintiff complains specifically: "Despite this [letter on August 7, 2008], the [d]efendant has continued to infringe on the Plaintiff's trademarks."  (*Id.*)  The major problem with these (implicit and explicit) assertions, though, is

11

simple: Plaintiff's *complaint was also filed August 7, 2008,* the same date[2]

Plaintiff initially contacted Defendant about their use of "Andy's Music."

(Doc. 15, Exhibit A, ¶ 3; Doc. 1.)

The second reason Plaintiff's argument fails in this regard is that,

especially with the above time frame in mind, *Coblentz* does not actually

support their position.  In *Coblentz*, the Court traced the Supreme Court's

distinction between intentional and negligent torts in *Calder v. Jones*, 465

U.S. 783 (1984), calling those in the first category "expressly aimed" and

those in the latter "untargeted."  *Coblentz*, 724 F.Supp. at 1369.  Expanding

on the foreseeability component of *World-Wide Volkswagen*, *supra*, the

Court in *Coblentz* concluded:

> In other words, when the origin of a deliberate, nonfortuitous
> tort is in one state . . . and the intended injury to a recognized
> victim is in another state, the tortfeasor has affirmatively
> established minimum contacts with the state in which the
> injury occurred, *if the tortfeasor knew at the time it committed
> the alleged tort that the victim would be injured in that state*.

*Id*. (emphasis added).

Here, it is clear that Defendant had no knowledge of Plaintiff until the very

day they were served with the current lawsuit, and there is a glaring lack of

evidence in the record that Defendant either targeted its activities expressly

---

[2]  Although the date on the certification page of Plaintiff's complaint reflects an August
8, 2008 date, the court record actually shows an entry date of August 7, 2008.

at the State of Alabama or that Defendant knew that Plaintiff would be

injured as a result of its use of a name they had enjoyed for over fifteen

years before the Mobile business recorded their trademark therein.

        This foreseeability element resurfaces in another case Plaintiff

attempts to use for the proposition that this Court's personal jurisdiction

over Defendant would be proper, *Alfa Corporation v. Alfagres, S.A.*, 385

F.Supp.2d 1230 (M.D.Ala. 2005).  In *Alfa*, a case dealing with the

"intentional" variety of torts outlined earlier by *Coblentz*, the court

addressed a situation substantially dissimilar to that before the undersigned.

As that Court mentioned:

> Alfa alleges that Alfagres intentionally committed tortious
> conduct by continuing to use the name "Alfa" in connection
> with its services and products even after (1) Alfa demanded
> that Alfagres withdraw its trademark applications . . . and
> cease and desist from all use of the name "Alfa," and (2)
> Alfagres's trademark application was rejected due to Alfa's
> senior registered marks.

*Id*. at 1236.

After mentioning the plaintiff's allegations, the *Alfa* Court concluded its

summary: "Taken as true, the facts alleged in the complaint clearly indicate

that Alfagres *knew* it was likely committing trademark infringement

specifically against Alfa in Alabama and continued to do so anyway."  *Id*.

(emphasis added).  Crucial, then, to the Middle District of Alabama's

reasoning that it indeed possessed personal jurisdiction over the Defendant

Alfagres was the foreseeability element mentioned repeatedly in this report. When discussing the notions of fair play and substantial justice, which together comprise the familiar second aspect of jurisdictional due process, the *Alfa* court mentioned that "while defending this action will necessarily impose burdens upon Alfagres, it is also clear that Alfagres was aware of the potential conflict it was creating with Alfa by its continued use of the 'Alfa' trademark" before concluding: "Therefore, Alfagres could and should have anticipated the burden of litigating a trademark infringement dispute in Alabama." *Id*. at 1237.

The case before the undersigned is markedly different than that in *Alfa* for a few reasons. First, the plaintiff in *Alfa* actually waited for some period of time after notifying the defendant of the recorded trademark before filing suit against them, unlike Plaintiff Andy's Music's conduct, described earlier. Second, Defendant here has *not* had a request to record their trademark denied because of the seniority of an existing mark, unlike its counterpart in *Alfa*. Finally, it does not appear that there would be any possible way for the defendant Chicago corporation to have *known* that its conduct would be injurious to *any* other corporation, much less one located in Mobile, Alabama whose very existence was relatively unknown until the current suit was filed. Rather than a semantic effort focusing on a mere technicality, the observation that Defendant Andy's Music has not

14

unsuccessfully tried to register their trademark does much work against Plaintiff's position.

To expand, consider the statute dealing with such matters, 15 U.S.C. § 1057.  Apparently unlike the defendant in *Alfa*, Defendant Andy's Music used its mark for over fifteen years prior to Plaintiff's registration thereof.  This single fact is of the utmost significance when interpreting § 1057, as that statute mentions that "the filing of [an] application to register [a] mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect . . . against any other person," but contains the proviso: "[E]xcept for a person whose mark has not been abandoned and who, prior to such filing . . . has used the mark."  15 U.S.C. § 1057(c)(1).  Importantly, Plaintiff has neither alleged that Defendant has either abandoned the use of the disputed mark nor asserted that Defendant has not, in fact, enjoyed its use since 1991.  Especially when viewed in this light, it does not appear that Defendant Andy's Music could have reasonably foreseen that they would be haled into court in Alabama.

### 4.    *Maximum Ranges for Minimum Contacts in Cyberspace*

Still, Plaintiff feels that, like the defendant in *Alfa*, Defendant's use of their website means that they should be amenable to service here in Alabama.  Defendant counters with the informative *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997).  In

*Zippo*, the Court initially repeats Supreme Court edicts that "as
technological progress has increased the flow of commerce between States,
the need for jurisdiction has undergone a similar increase" and that
"jurisdiction [cannot] be avoided merely because the defendant did not
*physically* enter the forum state."  *Id*. at 1123 (quoting *Hanson v. Denckla*,
357 U.S. 235, 250-51 (1958); *Burger King v. Rudzewicz*, 471 U.S. 462, 475
(1985)) (emphasis supplied).  Declining the argument that jurisdiction over
a defendant should exist anywhere within the reach of the world wide web
(i.e., the entire globe), the Court in *Zippo* instead opted for an all-
encompassing triple-category classification scheme:

> [O]ur review of the available cases and materials reveals that
> the likelihood that personal jurisdiction can be
> constitutionally exercised is directly proportionate to the
> nature and quality of commercial activity that an entity
> conducts over the Internet.  This sliding scale is consistent
> with well[-]developed personal jurisdiction principles.  At one
> end of the spectrum are situations where a defendant clearly
> does business over the Internet.  If the defendant enters into
> contracts with residents of a foreign jurisdiction that involve
> the knowing and repeated transmission of computer files over
> the Internet, personal jurisdiction is proper.  At the opposite
> end are situations where a defendant has simply posted
> information on an Internet Web site which is accessible to
> users in foreign jurisdictions.  A passive Web site that does
> little more than make information available to those who are
> interested in it is not grounds for the exercise of personal
> jurisdiction.  The middle ground is occupied by interactive
> Web sites where a user can exchange information with the
> host computer.  In these cases, the [propriety of the] exercise
> of jurisdiction is determined by examining the level of
> interactivity and commercial nature of the exchange of

16

information that occurs on the Web site.

*Id*. at 1124.

Providing some elucidation of their reasoning, the Court made the additional remark that because "[t]raditionally, when an entity reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper . . . [d]ifferent results should not be reached simply because business is conducted over the Internet."  *Id.*

Here, Defendant's website fits rather neatly into the second of the aforementioned categories, that pertaining to "passive" sites.  As stated previously, Defendant's site contents itself with a mapped indication of the physical address of the store in Chicago, the store's hours, and a local telephone number.  Importantly, Defendant "has never sold any product or provided any services through its website," and Plaintiff does not allege otherwise.  (Doc. 10, Exhibit A, ¶ 8.)  Regardless of whether *Zippo*'s rather ingenious scheme eventually finds its way into controlling jurisprudence here in the Southern District of Alabama, the undersigned finds the principle behind the scheme (a defendant "reaching beyond its boundaries") enough of a lodestone on which to set the course of this report.  In other words, because Defendant's site does not contain features that reveal an intent to reach across the borders of Illinois to do business with anyone in the State of Alabama, entertaining personal jurisdiction over them would

17

not be proper.  Simply put, the maintenance of an internet site listing its owner's basic business details does not independently support any court's personal jurisdiction over a defendant.  *See, e.g., Dynetech Corporation v. Leonard Fitness, Inc.*, 523 F.Supp.2d 1344, 1347 (M.D.Fla. 2007) (a defendant's website, although accessible in Florida, does not amount to "purposeful availment" of conducting business activities in Florida); *Instabrook Corporation v. Instantpublisher.com*, 469 F.Supp.2d 1120, 1127 (M.D.Fla. 2006) (even the maintenance of websites found to be "interactive" do not, of themselves, give rise to personal jurisdiction over defendants in Florida); *Butler v. Beer Across America*, 83 F.Supp.2d 1261, 1268 (N.D.Ala. 2000) (website found to be "closer to an electronic version of a postal reply card" with limited interactivity held to be "certainly insufficient" to satisfy the minimum contacts requirement of due process); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed.Cir. 2005) (holding that the defendant's site was not directed towards customers in D.C., but instead was available to all internet customers throughout the country); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (recognizing that "without more," creating a website "is not an act purposefully directed" towards a forum state); *Mid City Bowling Lanes & Sports Palace, Inc. v. Ivercrest, Inc.*, 35 F.Supp.2d 507 (E.D.La. 1999) (website that, like Defendant's, listed its address, local phone

18

number, and a small map where it was located in Chicago found to be insufficient to establish minimum contacts).

For the same reasons that the undersigned finds that Defendant's use of its website does not give rise to minimum contacts sufficient to establish personal jurisdiction, the undersigned is unconvinced that the exercise of such jurisdiction would be easily squared with those famous traditional notions of fair play and substantial justice to which American jurists alternately look when attempting to bring foreign defendants to heel.

**III.   Conclusion.**

For all of the foregoing reasons, the undersigned recommends that Defendant's Motion to Dismiss (Doc. 9) be **GRANTED** and that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.  The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 26th day of February, 2009.


                    s/WILLIAM E. CASSADY
                    UNITED STATES MAGISTRATE JUDGE


19

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.       *Objection*.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate

judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

21