IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDY'S MUSIC, INC., | : | |
| Plaintiff, | : | |
| vs. | : | CA 08-0463-KD-C |
| ANDY'S MUSIC, INC., | : | |
| Defendant. | : | |

**ORDER**

This matter is before the court on Plaintiff's objections to the Report and Recommendation entered on February 26, 2009[1], in which the Magistrate Judge recommended that the Defendant's motion to dismiss be granted.

The Plaintiff's primary objection to Magistrate Judge Cassady's recommendation is that the Report fails to consider "actions taken by the Defendant after the filing of the complaint". The Plaintiff argues that the court should rely on post-complaint activity of the defendant to support personal jurisdiction over the defendant. Specifically, the Plaintiff points to the fact that defendant was on notice of the alleged trademark infringement on August 7, 2008, but that it was not served until December 2008. Thus, the Plaintiff reasons that it "did not bring the current action[2] until after the Defendant had been notified of the possibility that it was infringing on the Plaintiff's trademark rights and provided with an opportunity to stop that infringement". The

---

[1] A corrected recommendation was entered on March 16, 2009, revising the recommendation to dismissal without prejudice.

[2] The court finds the Plaintiff's statement that the current suit was not brought until it served the defendant is inaccurate. Fed. R. Civ. P. 3 provides that "a civil action is commenced by filing a complaint with the court".

Plaintiff further complains that Judge Cassady either did not apply or misapplied the "effects" tests as forth in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed. 2d 804 (1984).

In *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), the court reiterated that,

> the constitutional litmus test for personal jurisdiction is whether the defendant "purposefully established 'minimum contacts' in the forum State.' " *Burger King*, 471 U.S. at 473-74, 105 S.Ct. 2174 (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154). Jurisdiction may be constitutionally asserted over the nonresident defendant whenever he has by his own purposeful conduct created a "substantial connection" with the forum state. *Id*. at 475, 105 S.Ct. 2174. The Court has made clear, however, that "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Id*. (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).
> Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

*Licciardello* at 1285.

In discussing the *Calder* "effects" test as it relates to a trademark infringement claim, the court held that "[m]ere negligent use of an infringing mark would not satisfy the *Calder* test." *Licciardello* at 1286 n.6.  The court further held that "where the internet is used as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness and that use is aimed at the victim's state of residence, the victim may hale the infringer into that state to obtain redress for the injury." *Id.* at 1288 n.8.

In short, where an intentional tort is claimed the *Calder* "effects" test is the appropriate analysis. *Id.* at 1286 (citing with approval cases that employed the "*Calder* 'effects' test when the plaintiff's claim involves an intentional tort.")  In this case, the Plaintiff has not alleged in its complaint any facts to support an intentional trademark infringement or willful intent to commit

unfair trade practices,[3] thus this case is not an "intentional tort" case to be analyzed under *Calder*. Plaintiff cannot change the nature of the claims in a response to a motion to dismiss.[4] Nor would the traditional notions of fair play and substantial justice allow the Plaintiff to create personal jurisdiction after the filing of the complaint by sending a letter to the defendant alleging infringement. *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000) ("[I]t is important to remember that the conduct at issue is that of the defendants. No plaintiff can establish jurisdiction over a defendant through his own actions.").

Accordingly, the undersigned adopts the Report and Recommendation with incorporated revisions as follows:

**I.     Background**

Plaintiff Andy's Music, a corporation organized under the laws of the State of Alabama with its principal place of business here in Mobile, owns two registered trademarks, one "for use in connection with musical instruments," and the other for a website with the same topic matter. (Doc. 15, p. 2.)  Defendant Andy's Music, also a corporation in the musical instrument business, "is a small, privately-held, locally[-]owned[-]and[-]operated retail musical instruments and concert equipment rental business" that hails from Chicago and is incorporated in the State of Illinois.  (Doc. 10, p. 1.)

Bringing claims of trademark infringement and unfair competition, Plaintiff seeks to

---

[3] In addition to injunctive relief, the Plaintiff has requested relief that is only obtainable if the conduct was accompanied with the intent to cause confusion, mistake or to deceive. However, there are no facts alleged in the complaint to support this relief.

[4] The court notes that in the complaint Plaintiff alleged that Defendant had "sufficient contacts with this state such that the prosecution of this action is not inconsistent with the Alabama or United States Constitutions." This statement was made on August 8, 2008.

3

enjoin Defendant from the use of the name "Andy's Music," alleging that Defendant's use of both of their trademarks "has already caused confusion in the marketplace[,] in that customers have contacted [Plaintiff] with the mistaken belief that [Plaintiff] was [Defendant]." (Doc. 1, ¶¶ 17, 19-20.)  Plaintiff also asks the court for "actual damages, [Defendant's] profits, costs, and attorneys' fees." (*Id*. at ¶ 1.)  Importantly, the only theory of personal jurisdiction that Plaintiff asserts regarding Defendant concerns the use of a website, http://www.andysmusic.com. (Doc. 1.)  Under Plaintiff's theory, the maintenance of this internet site creates an unavoidable expectation that Defendant could be haled into any court within the jurisdiction of the United States, regardless of the absence of any other factors establishing contacts with the forum state. (Doc. 15, p. 7.)  In short, because the reach of the world-wide web extends to every American jurisdiction, Plaintiff's theory would create personal jurisdiction over Defendant anywhere in the United States.

  **1.**  *A Short History of Andy's Music*

Regarding the time line of each corporation's association with the name "Andy's Music," Defendant opened its only storefront in the Windy City in 1991, using its current name, and "has operated its retail business continuously in the Chicago area . . . ever since." (Doc. 10, p. 2.)  Plaintiff, on the other hand, claims to have used the name in connection with musical instruments continuously since April of 1977, but provides no explanation as to why they did not register the trademark until late 2007. (Doc. 1, ¶¶ 7-8.)

In late 1999, Defendant acquired the internet domain name of "andysmusic.com" and has operated their website since April of 2000.  (Doc. 10, p. 2.)  Defendant claims that this is a "passive website," in that "it is not possible to purchase products on [the site] or to otherwise

transact business, and in fact Defendant has never sold any product or provided any services through its website." (Doc. 10, Exhibit A, ¶ 8.)   Instead, Defendant claims, their website "merely indicates the Chicago, Illinois location of [their] retail store and provides business hours and a *local* telephone number for the location as well as a map of the store's location in Chicago."  (Doc. 10, p. 2 (emphasis supplied).)  Defendant contends that these characteristics mark their website as "no more than an electronic informational listing for [their] local clientele," and as such, the maintenance of the site does not subject them to this court's jurisdiction.  (*Id*.)  Defendant also makes the specific observation that Plaintiff's trademark registrations were filed in May 2006, a date *fifteen years* removed from Defendant's store opening in the Prairie State and three months after Defendant launched its "passive" website.  (*Id*. at 3.)  Indeed, Plaintiff admits that their trademark registration for "Andy's Music Online" was not finalized until February 26, 2008, when Defendant's site had been up and running for almost two years, although they claim to have used the (unrecorded) mark as early as July 15, 2000.  (Doc. 1, ¶¶ 7, 9.)

**II.**     **Discussion.**

    **1.**     *Standard(s) of Law*

The undersigned notes, as an initial matter, that "the plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant." *The Mitchell Company, Inc. v. Campus*, 2008 WL 183344, *13 (S.D.Ala.) (quoting *Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002)).  Also, "Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." *Id*. (quoting *Future Technology Today, Inc., v. OSF Healthcare*

*Systems, Inc.*, 218 F.3d 1247, 1249 (11th Cir. 2000)). Finally, "[a] federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits. . ." *Id.* (quoting *Meier*, 288 F.3d at 1269).

*In personam* jurisdiction in this action, then, is predicated upon Alabama long-arm statute, which provides:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . .

Ala. R. Civ. P. 4.2(b)**.**

In a diversity action such as the present one, "a federal court may assert jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum State, and only if the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment." *Vermeulen v. Renault, U.S.A., Inc.*, 975 F.2d 746, 753 (11th Cir. 1992), *opinion modified and superseded on other grounds by Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir. 1993), *cert. denied sub nom. Regie Nationale des Usines Renault S.A. v. Vermeulen*, 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993); *see also Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992) (panel of the Eleventh Circuit states that in determining whether a district court may assert personal jurisdiction depends upon whether the district court could obtain personal jurisdiction over the defendants pursuant to the applicable state long-arm statute and whether the exercise of personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment)**,** *cert. denied sub nom. South Carolina Property & Casualty Ins. Guar. Ass'n v. Olivier*, 507 U.S. 983, 113 S.Ct. 1577, 123 L.Ed.2d 145, and *cert.*

*denied sub nom. Louisiana Ins. Guar. Ass'n v. Olivier*, 508 U.S. 910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993).

Where, as here, the courts of the forum state have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) ("Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."); *Ex parte Lagrone*, 839 So.2d 620, 623 (Ala. 2002) ("Rule 4.2, Ala.R.Civ.P., Alabama's long-arm rule, 'extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions.'"); *see also Steel Processors, Inc. V. Sue's Pumps, Inc. Rentals*, 622 So.2d 910, 911 (Ala. 1993); *Sieber v. Campbell*, 810 So.2d 641 (Ala. 2001); and *Duke v. Young*, 496 So.2d 37 (Ala. 1986), state law need not be applied: this Court "need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process." *Vermeulen*, *supra*, 975 F.2d at 753; *see also Olvier*, *supra*, 979 F.2d at 830 (same) and *Morris v. SSE, Inc.*, 843 F.2d 489, 492 n.3 (11th Cir. 1988) ("This case presents no need to examine Alabama's long-arm jurisdictional statute because that statute authorizes a court to assert personal jurisdiction to the limits of federal due process. . . . We recognize that it is well-established in this circuit that in a diversity case, a federal district court adjudicating a motion to dismiss for lack of personal jurisdiction must determine whether [the] assertion of jurisdiction comports with both state law and the due process requirements of the United States Constitution. . . . However, where the forum's courts interpret the forum's long-arm statute to the limits of *federal* due process, we believe it is not necessary to apply state law; application of the federal *International Shoe* two-

part analysis will suffice.").[5]

Turning to that seminal case, one can see that a nonresident defendant is amenable to a forum's jurisdiction if "(1) it possesses sufficient minimum contacts with the forum State to satisfy due process requirements, and (2) the forum's exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Vermeulen*, *supra*, 975 F.2d at 754 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), in turn quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). As stated in *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (citations omitted), "[d]ue process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *See also Ruiz de Molina*, *supra*, 207 F.3d at 1356 ("The Due Process Clause permits a court to summon a nonresident to defend himself in the forum so long as that person has some minimum contacts with that state and the exercise of personal jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice."); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2L.Ed.2d 223 (1957) (same).

As this court has stated elsewhere, "[j]urisdiction may be either general or specific," with general jurisdiction applying where a defendant's activities in the forum state are "substantial or continuous and systematic, regardless of whether those activities gave rise to the lawsuit" and

---

[5] It is also noteworthy that our Alabama courts have straightforwardly stated that a "physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident." *Sieber*, 810 So.2d at 644.

specific jurisdiction where "a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit." *Campus*, 2008 WL 183344, at *15 (quoting *Leventhal v. Harrelson*, 723 So.2d 566, 569 (Ala. 1998). To aid in this analysis, the Supreme Court has stated that when a cause of action is related to or arises out of a nonresident defendant's contacts with the forum, "the relationship among the defendant, the forum, and the litigation is the essential foundation of *in personam* jurisdiction." *Helicopteros*, *supra*, 466 U.S. at 414, 104 S.Ct. At 1872 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). Moreover, the Eleventh Circuit has stated:

> Specific jurisdiction arises out a party's activities in the forum that are related to the cause of action alleged in the complaint. It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where a defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. The requirement that there be minimum contacts is grounded in fairness. It assures that "the defendant's conduct and connection with the forum State [is] such that *he should reasonably anticipate being haled into court there*.

*Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (internal citations omitted) (emphasis added), *cert. denied*, 534 U.S. 827, 122 S.Ct. 68, 151 L.Ed.2d 34 (2001). *See also Dillon Equities v. Palmer & Cay, Inc.*, 501 So.2d 459, 462 (Ala. 1986) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ("The foreseeability that is critical to due process analysis. . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.").

### 2.   *Defendant's Use of Andysmusic.com*

Because it is undisputed that Defendant does not currently do business in Alabama and

never has done so, that Defendant is not required to be registered or otherwise qualified to do business in Alabama, that Defendant has never been required to file a tax return regarding the State of Alabama, that Defendant has no employees (including officers or directors) in Alabama, that Defendant does not maintain any offices in Alabama, that Defendant does not own any assets or maintain any bank accounts in Alabama, that Defendant does not own or lease any property in Alabama, that Defendant does not advertise its services in Alabama, that Defendant does not derive any revenue from goods, services, or products offered, sold or consumed in Alabama, and generally that Defendant has had no contact with the State of Alabama besides the allegedly relevant website, it is the nature of the website itself that becomes the focus of the present inquiry. (Doc. 10, p. 6-7; Doc. 15 (exhibiting a failure to challenge Defendant's aforementioned statements).)

Notably, the complaint itself does not allege that Defendant had any knowledge of the Plaintiff or its business activities. (Doc. 1.)

**3. *The Foreseeability Element(s) of Minimum Contacts***

Nevertheless, Plaintiff attempts to show that this Court's jurisdiction over Defendant is proper, pointing to the case of *Coblentz v. General Motors Corp.*, 724 F.Supp. 1364 (M.D.Ala. 1989) for the proposition that "the Defendant could reasonably have expected that the Plaintiff would bring suit [in Alabama], regardless of the Defendant's lack of other contacts in Alabama, and [that] the Defendant has the requisite minimum contacts with Alabama . . . ." (Doc. 15, p. 7.) Starting with the observation that "Defendant was notified on August 7, 2008, that it was infringing [upon] the [p]laintiff's trademarks," Plaintiff claims that "the evidence indicates that the [d]efendant was aware that it was likely committing trademark infringement against the

[p]laintiff at least as early as August 2008 and has continued to do so anyway," despite the notice of August 7th. (*Id*.) Plaintiff's argument must fail for a number of reasons.

By making the above comments, Plaintiff implies that they brought the current action only after they had alerted Defendant of the possibility that they were violating their recorded trademarks, then suffered the indignation of that Chicago-based moniker-sharer continuing to use the mark(s) and thus confuse potential customers, etc. Indeed, Plaintiff complains specifically: "Despite this [letter on August 7, 2008], the [d]efendant has continued to infringe on the Plaintiff's trademarks." (*Id*.) The major problem with these (implicit and explicit) assertions, though, is simple: Plaintiff's *complaint was also filed August 7, 2008,* the same date[6] Plaintiff initially contacted Defendant about their use of "Andy's Music." (Doc. 15, Exhibit A, ¶ 3; Doc. 1.)

The second reason Plaintiff's argument fails in this regard is that, especially with the above time frame in mind, *Coblentz* does not actually support their position. In *Coblentz*, the Court traced the Supreme Court's distinction between intentional and negligent torts in *Calder v. Jones*, 465 U.S. 783 (1984), calling those in the first category "expressly aimed" and those in the latter "untargeted." *Coblentz*, 724 F.Supp. at 1369. Expanding on the foreseeability component of *World-Wide Volkswagen*, *supra*, the Court in *Coblentz* concluded:

> In other words, when the origin of a deliberate, nonfortuitous tort is in one state . . . and the intended injury to a recognized victim is in another state, the tortfeasor has affirmatively established minimum contacts with the state in which the injury occurred, *if the tortfeasor knew at the time it committed the alleged tort that the victim would be injured in that state*.

---

[6] Although the date on the certification page of Plaintiff's complaint reflects an August 8, 2008 date, the court record actually shows an entry date of August 7, 2008.

11

*Id.* (emphasis added).

Here, there are no allegations in the complaint that Defendant either targeted its activities expressly at the State of Alabama or that Defendant knew that Plaintiff would be injured as a result of its use of a name they had enjoyed for over fifteen years before the Mobile business recorded their trademark therein.

This foreseeability element resurfaces in another case Plaintiff attempts to use for the proposition that this Court's personal jurisdiction over Defendant would be proper, *Alfa Corporation v. Alfagres, S.A.*, 385 F.Supp.2d 1230 (M.D.Ala. 2005). In *Alfa*, a case dealing with the "intentional" variety of torts outlined earlier by *Coblentz*, the court addressed a situation substantially dissimilar to that before the undersigned. As that Court mentioned:

> Alfa alleges that Alfagres intentionally committed tortious conduct by continuing to use the name "Alfa" in connection with its services and products even after (1) Alfa demanded that Alfagres withdraw its trademark applications . . . and cease and desist from all use of the name "Alfa," and (2) Alfagres's trademark application was rejected due to Alfa's senior registered marks.

*Id.* at 1236.

After mentioning the plaintiff's allegations, the *Alfa* Court concluded its summary: "Taken as true, the facts alleged in the complaint clearly indicate that Alfagres *knew* it was likely committing trademark infringement specifically against Alfa in Alabama and continued to do so anyway." *Id.* (emphasis added). Crucial, then, to the Middle District of Alabama's reasoning that it indeed possessed personal jurisdiction over the Defendant Alfagres was the foreseeability element mentioned repeatedly in this report. When discussing the notions of fair play and substantial justice, which together comprise the familiar second aspect of jurisdictional due process, the *Alfa* court

mentioned that "while defending this action will necessarily impose burdens upon Alfagres, it is also clear that Alfagres was aware of the potential conflict it was creating with Alfa by its continued use of the 'Alfa' trademark" before concluding: "Therefore, Alfagres could and should have anticipated the burden of litigating a trademark infringement dispute in Alabama." *Id*. at 1237.

The case before the undersigned is markedly different than that in *Alfa* for a few reasons. First, the plaintiff in *Alfa* actually waited for some period of time after notifying the defendant of the recorded trademark before filing suit against them, unlike Plaintiff Andy's Music's wily antics, described earlier. Second, the Plaintiff in this case has not alleged in the complaint that defendant' alleged trademark infringement was intentional. Finally, Defendant here has *not* had a request to record their trademark denied because of the seniority of an existing mark, unlike its counterpart in *Alfa*. Rather than a semantic effort focusing on a mere technicality, the observation that Defendant Andy's Music has not unsuccessfully tried to register their trademark does much work against Plaintiff's position.

To expand, consider the statute dealing with such matters, 15 U.S.C. § 1057. Apparently unlike the defendant in *Alfa*, Defendant Andy's Music used its mark for over fifteen years prior to Plaintiff's registration thereof. This single fact is of the utmost significance when interpreting § 1057, as that statute mentions that "the filing of [an] application to register [a] mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect . . . against any other person," but contains the proviso: "[E]xcept for a person whose mark has not been abandoned and who, prior to

such filing . . . has used the mark." 15 U.S.C. § 1057(c)(1). Importantly, Plaintiff has neither alleged that Defendant has either abandoned the use of the disputed mark nor asserted that Defendant has not, in fact, enjoyed its use since 1991. Especially when viewed in this light, it does not appear that Defendant Andy's Music could have reasonably foreseen that they would be haled into court in Alabama.

**4.**      *Maximum Ranges for Minimum Contacts in Cyberspace*

Still, Plaintiff feels that, like the defendant in *Alfa*, Defendant's use of their website means that they should be amenable to service here in Alabama. Defendant counters with the informative *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997). In *Zippo*, the Court initially repeats Supreme Court edicts that "as technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase" and that "jurisdiction [cannot] be avoided merely because the defendant did not *physically* enter the forum state." *Id.* at 1123 (quoting *Hanson v. Denckla*, 357 U.S. 235, 250-51 (1958); *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis supplied). Declining the argument that jurisdiction over a defendant should exist anywhere within the reach of the world wide web (i.e., the entire globe), the Court in *Zippo* instead opted for an all-encompassing triple-category classification scheme:

> [O]ur review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well[-]developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign

> jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the [propriety of the] exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id*. at 1124.

Providing some elucidation of their reasoning, the Court made the additional remark that because "[t]raditionally, when an entity reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper . . . [d]ifferent results should not be reached simply because business is conducted over the Internet." *Id*.

Here, Defendant's website fits rather neatly into the second of the aforementioned categories, that pertaining to "passive" sites. As stated previously, Defendant's site contents itself with a mapped indication of the physical address of the store in Chicago, the store's hours, and a local telephone number. Importantly, Defendant "has never sold any product or provided any services through its website," and Plaintiff does not allege otherwise. (Doc. 10, Exhibit A, ¶ 8.) Regardless of whether *Zippo*'s rather ingenious scheme eventually finds its way into controlling jurisprudence here in the Southern District of Alabama, the undersigned finds the principle behind the scheme (a defendant "reaching beyond its boundaries") enough of a lodestone on which to set the course of this report. In other words, because Defendant's site does not contain features that reveal

an intent to reach across the borders of Illinois to do business with anyone in the State of Alabama, entertaining personal jurisdiction over them would not be proper.  Simply put, the maintenance of an internet site listing its owner's basic business details does not independently support any court's personal jurisdiction over a defendant.  *See, e.g., Dynetech Corporation v. Leonard Fitness, Inc.*, 523 F.Supp.2d 1344, 1347 (M.D.Fla. 2007) (a defendant's website, although accessible in Florida, does not amount to "purposeful availment" of conducting business activities in Florida); *Instabrook Corporation v. Instantpublisher.com*, 469 F.Supp.2d 1120, 1127 (M.D.Fla. 2006) (even the maintenance of websites found to be "interactive" do not, of themselves, give rise to personal jurisdiction over defendants in Florida); *Butler v. Beer Across America*, 83 F.Supp.2d 1261, 1268 (N.D.Ala. 2000) (website found to be "closer to an electronic version of a postal reply card" with limited interactivity held to be "certainly insufficient" to satisfy the minimum contacts requirement of due process); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (recognizing that "without more," creating a website "is not an act purposefully directed" towards a forum state); *Mid City Bowling Lanes & Sports Palace, Inc. v. Ivercrest, Inc.*, 35 F.Supp.2d 507 (E.D.La. 1999) (website that, like Defendant's, listed its address, local phone number, and a small map where it was located in Chicago found to be insufficient to establish minimum contacts).

For the same reasons that the undersigned finds that Defendant's use of its website does not give rise to minimum contacts sufficient to establish personal jurisdiction, the undersigned is unconvinced that the exercise of such jurisdiction would be easily squared with those traditional notions of fair play and substantial justice to

which American jurists alternately look when attempting to bring foreign defendants to heel.

Accordingly the motion to dismiss is **GRANTED**.  Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

Done this 15th day of April, 2009.

**s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**